## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

<table>
<tr><td>TOKIO MARINE SPECIALTY<br>INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ALTOM TRANSPORT, INC.; JAVONTE<br>AZCONA; MICHAEL CHAPA; and<br>CORTEZ MCCULLOUGH,<br><br>Defendants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><br><br><br><br>20 C 7006</td></tr>
</table>

## MEMORANDUM OPINION AND ORDER

**CHARLES P. KOCORAS, District Judge:**

In this insurance coverage action, Tokio Marine Specialty Insurance Company ("Tokio Marine") seeks a declaration it has no duty to defend or indemnify its insured, Altom Transport, Inc. ("Altom"), in connection with three underlying lawsuits brought in the Circuit Court of Cook County, Illinois. Altom sought coverage from Tokio Marine, and Tokio Marine denied same. This lawsuit ensued, and the parties filed cross-motions for summary judgment. For the following reasons, the Court denies Tokio Marine's Motion and grants Altom's Motion.

## BACKGROUND

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). The following facts are taken from the record and are undisputed unless otherwise noted.

**The Underlying Lawsuits**

In August 2019, Altom transported a tankard-trailer containing isopentane from East Chicago, Indiana, to a facility in Hillsborough, New Jersey. Tokio Marine says unloading was completed on August 12, 2019[1], and on August 14, 2019, the tankard-trailer returned to Indiana where the Altom driver then brought it to a TAC East, Inc. ("TAC East") facility in East Chicago to have it cleaned.

On July 28, 2020, Javonte Azcona, Michael Chapa, and Cortez McCullough (collectively, the "Underlying Plaintiffs") filed separate lawsuits (the "Underlying Lawsuits") in the Circuit Court of Cook County, Illinois, against Altom and TAC East. The Underlying Plaintiffs allege that on August 14, 2019, they were employed by Ron's Staffing Services, Inc., and were "deployed to assist in cleaning commercial vehicles and transports" at TAC East's East Chicago facility. On the day of the explosion, the Underlying Plaintiffs allege they were preparing to clean the tankard-trailer Altom brought for cleaning that day.

One of the Underlying Plaintiffs climbed up to the top of the tankard-trailer and opened it to discover that about forty gallons of liquid-waste remained in the tank. The Underlying Plaintiffs allege that at the direction of their supervisor, they opened the

---

[1] The parties disagree as to when "unloading" was completed.

valve on the side of the tank and drained the waste into the facility's drainage system. When the waste reached the boiler room, it reacted with an open flame, causing an explosion. The Underlying Plaintiffs allege they were still in the work area working on the tankard-trailer when the explosion took place and that they sustained first- and second-degree burns.

As a result of these events, the Underlying Plaintiffs brought claims against TAC East for negligence and premises liability and claims for negligence against Altom. The Underlying Plaintiffs allege Altom failed to disclose to TAC East the amount of highly flammable chemicals that remained inside the tankard-trailer, failed to exercise a reasonable degree of care and caution in its delivery of the tankard-trailer to TAC East, and carelessly and negligently left an unsafe amount of highly flammable chemicals inside its tankard-trailer.

**Relevant Policy Provisions**

Tokio Marine issued Policy No. PPK1856258 to Al Warren Oil Company, Inc., as named insured (the "Policy"). The Policy provided premises environmental insurance, including transportation coverage, with an effective policy period from August 3, 2018 to August 3, 2021.

The Policy extended coverage, in part, as follows:

**E. Transportation**

We will pay for **loss, remediation expense,** or **emergency expense** in excess of the **self-insured retention** that the **insured** becomes legally obligated to pay as a result of a **claim** for **bodily injury, property**

**damage** or **environmental damage** arising out of **contamination** that is caused by **transportation**, but only if:

a.   Such **claim** is first made against the **insured** and reported to us during the **policy period**, or within the **extended reporting period**, if applicable; and

b.   The **contamination** first commences on or after the Transportation Retroactive Date scheduled onto the policy.

This coverage may to be utilized to evidence financial responsibility of any **Insured** under any federal, state, provincial or local **law**.

Dkt. # 37-5, at 16 (emphasis in original).

The Policy contains the following definitions:

D. **Contaminant** means any solid, liquid, gaseous or thermal irritant or pollutant, including but not limited to smoke, vapor, odors, soot, fumes, acids, alkalis, toxic chemicals, hazardous substances, petroleum hydrocarbons, legionella, **mold**, electromagnetic fields, silt, sedimentation, viruses, bacteria, and waste materials including but not limited to municipal, industrial, medical, pathological, and **low level radioactive waste and materials**.

E. **Contamination** means:

1.   The discharge, dispersal, release or escape of any **contaminant** into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such **contaminant** is not naturally occurring in the environment, or in any structure, in the amounts or concentrations discovered; or

2.   The presence of **contaminants** that have been illegally disposed of or abandoned at **your insured location** by parties other than an **insured** provided that, prior to the **inception date**, no **insured** knew or reasonably should have known of the presence of such **contaminants**; or

3.   The presence of facility-borne viruses, bacteria, legionella or **mold** in any structure at **your insured location**.

***

4

DD. **Transportation** means the transport of your goods, materials, product or waste beyond the boundaries of **your insured location** by **your conveyance** or a **carrier**. **Transportation** includes loading or unloading of your goods, products, materials or waste onto or from a **vehicle**, but only at locations other than **your insured location**. **Transportation** begins upon loading your goods, products, materials or waste onto a **vehicle** and ends when goods, products, materials or waste has been unloaded from a **vehicle**.

Dkt. #37-5, at 16–17, 21 (emphasis in original).

The Policy also includes a Contractor's Environmental Coverage Endorsement which provides, in pertinent part:

**2.** Section **I. Insuring Agreements** is amended to include the following:

**Contractor's Environmental Coverage**

We will pay on behalf of the **insured** for **loss** or **remediation expense** in excess of the **self-insured retention** that the **insured** becomes legally obligated to pay as a result of a **contamination** caused by **your contracting operations** or **completed operations**, provided:

**\*\*\***

**3.** Section **II. Definitions** is amended to include the following:

**Completed operations** means work from **your contracting operations** that have been completed. **Your contracting operations** will be deemed completed at the earliest of the following times:

**1.** When all of **your contracting operations** to be performed in the contract are complete;

**2.** When all of **your contracting operations** to be done at a **project site** have been completed; or

**3.** When that part of **your contracting operations** at **a project site** has been put to its intended use by any person or organization other

5

than another contractor or subcontractor working on the same project.

**Your contracting operations** that may need service, maintenance, correction, repair or replacement, but are otherwise complete, will be deemed complete.

\*\*\*

Dkt. #37-5, at 42–43 (emphasis in original).

Altom sought coverage under the Policy in connection with the Underlying Lawsuits, which Tokio Marine denied because it believed that the Underlying Plaintiffs did not allege bodily injury "arising out of contamination caused by transportation" as defined by the Policy. Tokio Marine then filed its Complaint for Declaratory Judgment against Altom, seeking a declaration that Tokio Marine has no duty to defend or indemnify Altom in connection with the Underlying Lawsuits. Both parties now move for summary judgment.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cnty*., 752 F.3d 708, 712 (7th Cir. 2014) (cleaned up).

In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1074 (7th Cir. 2016). The nonmovant "must go beyond the pleadings" to demonstrate that there is evidence "upon which a jury could properly proceed to find a verdict in [their] favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–69 (7th Cir. 2013).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 F. App'x 92, 95 (7th Cir. 2012). Even though the parties may agree that no genuine dispute of material fact exists, the Court can deny all motions if the parties do not establish their rights to judgment as a matter of law. *Grabach v. Evans*, 196 F. Supp. 2d 746, 747 (N.D. Ind. 2002).

In deciding a motion for summary judgment, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). The Court cannot weigh conflicting evidence, assess the credibility of witnesses, or determine the ultimate truth of the matter, as these are functions of the

jury. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Omnicare, Inc. v. UnitedHealth Grp., Inc*., 629 F.3d 697, 704–05 (7th Cir. 2011).

## DISCUSSION

In Illinois, the duty to defend is broader than the duty to indemnify. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021). When determining whether an insurer must defend an insured, Illinois courts compare the allegations of the underlying complaint to the relevant policy provisions. *Green4All Energy Sols., Inc. v. State Farm Fire & Cas. Co.*, 2017 IL App (1st) 162499, ¶ 24. If any of the complaint's allegations even *potentially* fall within a policy's coverage, the insurer is obligated to defend its insured. *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 364 Ill. App. 3d 946, 951 (2d Dist. 2006) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 125 (1992)). This is so even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy. *Country Mut. Ins. Co. v. Dahms*, 2016 IL App (1st) 141392, ¶ 38. However, if the complaint does not state facts bringing the case within or potentially within coverage, there is no duty to defend. *L.J. Dodd Constr., Inc. v. Federated Mut. Ins. Co.*, 365 Ill. App. 3d 260, 262 (2d Dist. 2006). Both an insurance policy and an underlying complaint "must be liberally construed in favor of the insured." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74 (1991) (internal citations omitted).

As an initial matter, it is undisputed that the isopentane that was drained from the tankard-trailer falls within the definition of "contaminant" under the Policy. It is further undisputed that the draining of the isopentane from the tankard-trailer, as alleged by the Underlying Plaintiffs, falls within the Policy's definition of "contamination."

Tokio Marine argues it has no duty to defend because the alleged bodily injuries did not arise out of contamination caused by transportation, as required by the Policy. More specifically, Tokio Marine says the Underlying Plaintiffs make no allegation that they were ever in direct contact with or exposed to the purported contaminants. Instead, they allege their injuries arose out of an inadequate drainage system into which the isopentane was drained. The Court, however, disagrees with Tokio Marine's assertion that the Underlying Plaintiffs needed to specifically allege they were in direct contact with or exposed to the isopentane.

Altom argues Tokio Marine's assertion that the Underlying Plaintiffs had already begun cleaning the tankard-trailer when the explosion occurred is not supported by the allegations in the Underlying Complaints, which Altom says do not suggest that the draining process was completed or that the Underlying Plaintiffs were cleaning the tank when the explosion occurred. It is alleged that the explosion occurred when the "liquid reacted with an open flame" in the "boiler room adjacent to the work-area," and that the Underlying Plaintiffs were "still in the work area working on the tankard-trailer when the explosion took place." Dkt. # 37-3, ¶¶ 17–18. "Working on the tankard-trailer"

9

could be construed as cleaning it, or it could be construed as continuing to drain the isopentane from the tank.

With respect to whether the injuries alleged arose out of contamination and liberally construing the allegations in Altom's favor, the facts and damages alleged potentially fall within the Policy's coverage because the injuries immediately sustained by the Underlying Plaintiffs potentially occurred while they were still draining the isopentane from the tankard-trailer and therefore arose out of contamination.

Tokio Marine argues that even if the Underlying Plaintiffs allege their injuries arose out of contamination, there is still no potential for coverage because any purported contamination was not caused by transportation. According to Tokio Marine, transportation ended when Altom unloaded the isopentane in New Jersey, days before the explosion. In support of this argument, Tokio Marine relies on the "completed operations" doctrine Illinois courts apply to determine when unloading is complete. The Illinois Supreme Court has held that "'unloading' has been completed when, subsequent to removal of the material from the vehicle, the deliverer has finished his handling of it, and the material has been placed in the hands of the receiver at the designated reception point, despite the fact that it is necessary to transport the material thereafter to another point." *Estes Co. of Bettendorf, Iowa v. Emps. Mut. Cas. Co.*, 79 Ill. 2d 228, 234 (1980).

Tokio Marine says the fact that the isopentane was not entirely removed from the tanker is "inconsequential as unloading refers to a *process* that ended because the

product had been delivered and unloaded in New Jersey, no further action by Altom as to the isopentane was contemplated, and the truck had returned to its home state." Dkt. # 36, at 9. Furthermore, Tokio Marine argues the Altom driver relinquished possession of the vehicle to TAC East so that the tanker could be cleaned, prior to the purported contamination.

Altom points out that Tokio Marine's cited authority pertaining to the "completed operations" doctrine involves automobile insurance policies and automobile exclusions, not a Premises Environmental Coverage Policy like in this case. According to Altom, finding the "completed operations" doctrine applies to a Premises Environmental Coverage Policy would "effectively violate the parties' intent under the plain language of the Policy." Dkt. # 38, at 12. Altom says Tokio Marine's failure to include explicit "completed operations" language under Part E of its insuring agreement, as it did under the Contractor's Environmental Coverage Endorsement, is evidence that the parties never intended the "completed operations" doctrine to limit coverage.

The Policy provides that "Transportation . . . ends when goods, products, materials or waste has been unloaded from a vehicle." Dkt. # 37-5, at 21. As discussed above, the Underlying Complaints allege that the Underlying Plaintiffs were "working on the tankard-trailer when the explosion occurred," which could reasonably be construed as the Underlying Plaintiffs were still draining (*i.e.*, unloading) the isopentane from the tank when the explosion happened. Under the plain language of the Policy,

then, "transportation" would not have ended until all the waste was drained from the tank.

Liberally construing the allegations of the Underlying Complaints in favor of Altom, the Court concludes that the allegations at least potentially fall within the coverage grant of the Policy. As such, Tokio Marine owes a duty to defend. The question of whether an insurer must indemnify, however, is not ripe until the underlying litigation ends. *Travelers Ins. Co. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir. 1992). Thus, the portion of the Tokio Marine Complaint relating to the duty to indemnify remains stayed until the Underlying Lawsuits are over. *See* Dkt. # 15.

## CONCLUSION

For the foregoing reasons, the Court denies Tokio Marine's Motion for Summary Judgment [36] and grants Altom's Cross-Motion for Summary Judgment [38].

It is so ordered.

Dated: August 2, 2022

Charles P. Kocoras
United States District Judge

12